IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

DAVID MOODY, #K1926                                                    PETITIONER

versus                                             CIVIL ACTION NO. 2:04cv117-KS-MTP

MICHAEL WILSON, Superintendent of MSP
and JIM HOOD, Attorney General                                        RESPONDENTS

OPINION AND ORDER

BEFORE THE COURT is the *pro se* petition of David Moody for a writ of *habeas corpus* under  28 U.S.C. § 2254.  Having considered the petition, the answer, the reply,[1] the record of the state court proceedings and the applicable law,  the court finds that the petition should be DENIED.

PROCEDURAL HISTORY

On February 23, 2000, David Moody was convicted by a jury of  murder in the commission of the felony of rape in the death of Robbie Bond and of accessory after the fact to capital murder in the death of William Hatcher.  He was thereafter sentenced to serve a term of life without the possibility of parole on the capital murder conviction and five years on the accessory conviction with the sentences to run consecutively, all in the custody of the Mississippi Department of Corrections.  On June 7, 2000, he filed a direct appeal of his conviction and sentence to the Mississippi Supreme Court, setting out his claims of error as follows:

1. Did the Trial Court err in denying the Defendant's Motion to Dismiss due to the violations of the Defendant's right to a Speedy Trial?

2. Did the Trial Court err in failing to suppress the statements made by the Defendant?

---

[1] In his reply [17], Moody offers no further insight into the claims stated in his petition, stating instead that "due to [his] lack of understanding he will stand on...all previous arguments made by his attorneys to other courts."

3.  Did the Trial Court err in failing to sever the two (2) capital murder counts of the multi-count indictment?

4.  Did the Trial Court err in denying the Defendant's Motion to Transfer this matter to the Youth Court of Perry County?

5.  Did the Trial Court err in denying the Defendants Motion to Quash the Jury panel during voir dire?

6.  Did the Trial Court err in failing to declare a Mistrial during the opening and closing arguments when the special prosecutor made improper comments?

7.  Did the Trial Court err in failing to quash the indictments and in failing to direct a verdict for the Defendant on proper motion of the Defendant?

8.  Did the Trial Court err in granting jury instruction S-3?

9.  Did the Trial Court err in granting jury instruction S-8, which was an aiding and abetting instruction and was not alleged in the indictment?

10.  Did the Trial Court err in granting jury instruction S-12, which lessened the burden of proof for the prosecution?

11.  Did the Trial Court err in failing to grant jury instruction D-17, dealing with "duress", which was the theme of the Defendant's case?

12.  Did the Trial Court err in failing to consider the Youth Court Act when sentencing the Defendant?

13.  Did the Trial Court err in failing to grant a new trial? [2]

On September 10, 2002, the Mississippi Court of Appeals affirmed Moody's conviction and sentences by written opinion.  *Moody v. State of Mississippi,* 838 So. 2d 324 (Miss. App. 2002).  The court of appeals denied his motion for rehearing, and the Mississippi Supreme Court denied his petition for writ of certiorari.

On October 9, 2003, Moody filed in the Mississippi Supreme Court his "Motion to File

---

[2]The asserted errors are taken verbatim from the Brief for the Appellant filed in case number 2000-KA-01020 on September 6, 2001.

2

Post-Conviction in Lower Court" in which he asserted that "[h]is U.S. and Mississippi State constitutional rights were violated." [3]  On December 11, 2003, the supreme court denied Moody's application: "After due consideration, the panel finds that Moody has failed to present a substantial showing of the denial of a state or federal right, and that the motion should be denied. Miss. Code Ann. § 99-39-27(5)."

Moody filed his *pro se* Petition for Writ of Habeas Corpus on March 22, 2004 .

GROUNDS ASSERTED FOR HABEAS CORPUS RELIEF

By his petition, Moody enumerates eleven grounds upon which he claims habeas corpus relief is warranted.  These grounds are, in large part, those raised in his direct appeal and are paraphrased as follows:

Ground One:   He was denied his Sixth Amendment right to a speedy trial.

Ground Two:  He was denied his Fifth Amendment right against self-incrimination by the trial court's failure to suppress statements given in violation of Miranda and Mississippi's Youth Court Act.

Ground Three:  He was denied a fair trial and due process by the trial court's refusal to sever the two counts of capital murder.

Ground Four:  He was denied due process by the trial court's failure to transfer the case to Youth Court.

Ground Five:   He was denied his Sixth Amendment right to be tried by a fair and impartial jury by the trial court's refusal to quash the jury panel following extraneous comments made by two potential jurors.

Ground Six:  He was denied his Fifth and Sixth Amendment rights by the trial court's failure to declare a mistrial when the prosecutor made improper comments in opening statement and in closing argument.

Ground Seven:  He was deprived of due process by the trial court's failure to direct a verdict of acquittal and also by its failure to quash the indictment.

---

[3] Cause No. 2003-M-02208.

Ground Eight:  He was denied a fair trial by the trial court's giving jury instruction S-3, which relieved the State of its burden of proof on the offense of rape.

Ground Nine:  He was denied a fair trial by the trial court's giving jury instruction S-8, an instruction on aiding and abetting, which was not charged in the indictment.

Ground Ten:  He was denied a defense to the charges against him by the trial court's failure to give a duress instruction.

Ground Eleven:  He was denied due process by the trial court's failure to grant a new trial.

THE STANDARD OF REVIEW

As Moody's petition was filed after the effective date of The Antiterrorism and Effective Death Penalty Act (AEDPA),[4] the AEDPA and case law interpreting it provide the standards under with the petition must be evaluated.[5]   As an initial matter, exhaustion of state remedies is a mandatory prerequisite to federal habeas relief under 29 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant   to the judgment of a State Court shall not be granted unless it appears that–
>> (A)  the applicant has exhausted the remedies available in the courts of the State;
> or
>> (B)(i)  there is an absence of available State corrective process; or
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> . . . .
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

See Sterling v. Scott, 57 F.3d 451, 453 (5th Cir. 1995)(stating that exhaustion of all claims in state court is "a fundamental prerequisite to federal habeas relief").

To satisfy the exhaustion requirement, the petitioner must present his claims to the

---

[4] See Neal v. Puckett, 286 F.3d 230, 235 (5th Cir. 2002).

[5] AEDPA provides that the court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 29 U.S.C. § 2254(a) (emphasis added).

highest state court in a procedurally proper manner so that the state courts are given a fair

opportunity to consider and pass upon challenges to a conviction before those issues come to

federal court for habeas corpus review.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999).

This is so because state courts, "like federal courts, are obliged to enforce federal law." *Id.* at

844.  Thus, "when a prisoner alleges that his continued confinement for a state court conviction

violates federal law, the state courts should have the first opportunity to review this claim and

provide any necessary relief." *Id.*  Exhaustion results from the petitioner's pursuit of his claims

through state courts either by direct appeal or by post-conviction proceedings. *See Orman v.

Cain,* 228 F.3d 616, 620 & n.6 (5th Cir. 2000).

Along with a determination of whether the petitioner has exhausted state court remedies,

the court must also determine whether the state court has decided the asserted claim on the

merits, thereby barring habeas corpus review except under very limited circumstances:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of,  clearly established Federal law, as determined by the Supreme
>> Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the
>> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the AEDPA, when the state court has adjudicated the petitioner's claim on the

merits,[6] the federal court reviews mixed questions of law and fact under subsection (d)(1),

*Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998), which allows habeas relief if the federal

court finds that the challenged state court decision involved an unreasonable application of the

---

[6] "On the merits" refers to substantive, rather than procedural, disposition of the case.
*Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002).

law to the facts.  *See  Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).  The "unreasonable

application" inquiry is based on an objective standard, and for purposes of (d)(1) analysis,

"unreasonable" does not equate with "incorrect." *Garcia v. Dretke,* 388 F.3d 496, 500 (5th Cir.

2004).  The application of clearly- established precedent must be both incorrect and unreasonable

for federal habeas relief to be warranted.  *Id.*   A federal court "making the unreasonable

application inquiry should ask whether the state court's application of law was objectively

unreasonable,"[7] but it is to review only the state court's ultimate conclusion and not the reasoning

that was used to reach it.  *Neal,* 286 F.3d at 246.

Pure questions of fact are reviewed under subsection (d)(2). *Corwin v. Johnson,* 150 F.3d

467, 471 (5th Cir. 1998).  Determination of a factual issue made by the state court is entitled to a

presumption of correctness which the petitioner can rebut only by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *Brewer v.Dretke,* 442 F.3d 273, 276 & n. 7 (5th Cir. 2006).

In *Panzavecchia v. Wainwright,* the Fifth Circuit described the interplay between the

exceptions:

> The standard for reviewing habeas corpus petitions by prisoners in state custody is
> set forth in 28 U.S.C. 2254(d).[8]  Under this statutory criteria, factual issues
> resolved by state courts are presumed correct and may not be set aside unless
> clearly erroneous.  This presumption does not apply to legal findings or mixed
> questions of law and fact.  Factual issues are defined as those relating to basic,
> primary, or historical facts: facts in the sense of a recital of external events and the
> credibility of their narrators.  Mixed questions of law and fact require the
> application of legal principles to the historical facts of the case.

658 F.2d 337, 339 (5th Cir. 1981) (internal quotations and citations omitted)(also recognizing

that "mixed questions of law and fact require the application of constitutional principles to the

---

[7]*Neal ,* 286 F.3d at 244 (citing *Williams v. Taylor,* 529 U.S. 362, 409 (2000)).

[8] The presumption of correctness is now found in 28 U.S.C. 2254(e)(1).

facts as found").

It is by these principles and against the backdrop of exhaustion requirements and substantive determinations that Moody's claims must be viewed–with the added caveat that a federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir. 1986).

THE UNEXHAUSTED CLAIM

In Ground Six, Moody requests habeas corpus relief on the basis of his claim that  he was "denied his Fifth Amendment right to remain silent when the prosecutor made opening statements which indicated to the jury that the petitioner had an obligation to explain his actions."[9]   He did challenge on direct appeal the trial court's refusal to grant a mistrial following the prosecutor's remark: "Now, you may be wondering at this point, as I am, what can he say–what can he say.  He admitted it all."[10] *See Moody,* 838 So. 2d at 335 ¶ 41.  Moody did not,

---

[9] Petition at 7 para. F.

[10] Tr. 651: 5-7.   The remark followed the prosecutor's comments about David Moody's statements and the physical evidence of the crimes:

> With all this evidence at that time, they didn't know who had done this to Robbie Bond and William Hatcher.  The reason–part of the reason we now know exactly what was done to them is that on May 18th of 1995, two-and-a-half or three days after this all happened, David Moody admitted it.  Tr. 649: 12-17.

> After David had signed a statement saying he knew what his rights were and he had the full right to remain silent, [Rigel] put him on video, and David Moody is going to tell you from his own mouth during this trial what he and Kenneth Moody did to these people.  And that, you know, really should be enough for you to do your job here today, but we're not going to be satisfied with that.  We want to be absolutely sure that we have proved everything beyond a reasonable doubt, so we're going to show you all this physical evidence.  Tr. 649: 27–650: 7.

> We're also going to establish for you independently of anything Mr. Moody says that

7

however, base his challenge upon denial of his Fifth Amendment right against self-incrimination.

Although the court of appeals recognized the existence of the right, that was not the basis of its decision on the issue: "While these remarks might reasonably be interpreted as an improper challenge to the defendant to waive his Fifth Amendment right against self-incrimination and take the stand to testify, Moody does not advance that argument. ... Therefore, as to the specific issue presented to us in the appeal, we find no error in the trial court's refusal to grant a mistrial based on these statements by the prosecution." *Moody,* 838 So. 2d at 335 ¶¶ 41-42.   Since the Fifth Amendment claim was not presented to Mississippi's appellate courts for review on direct appeal or in Moody's application for post-conviction relief, Moody cannot be deemed to have exhausted his state court remedies on this claim. *See Orman v. Cain,* 228 F.3d 616, 620 (5th Cir. 2000)(stating that a petitioner "must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief").

Because the Fifth Amendment claim was raised for the first time in his federal habeas petition and because the Mississippi Supreme Court would now find it to be procedurally barred,[11] that claim is procedurally defaulted for purposes of federal habeas review.  *Bagwell v.*

---

these two victims were at the bridge.  We're also going to show you how they died. ... And we're going to show you independently of anything this woman was raped.  People are going to lie to you and they're going to identify the sperm that they found in the victim as belonging to Kenneth Moody. Not David Moody, but Kenneth Moody.  Tr. 650: 22–651: 4.

[11] *See* MISS. CODE ANN. § 99-39-27(9): "The dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this article."  *See also Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir. 1997)(referring to § 99-39-27(9) as a bar to second or successive state habeas petitions).  The petitioner has raised no issue as to whether Mississippi applies section  99-39-27(9) "strictly or regularly."  *See id.* at 860-61(concluding that where petitioner failed to sustain his burden of showing inconsistent and irregular application of procedural bar, he had defaulted his federal claims in state court).

*Dretke,* 372 F.3d 748, 755 (5th Cir. 2004) (noting that "where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement").  The procedural default bar applies even if the unexhausted claim is related to an exhausted claim  and even if "all the facts necessary to support the federal claim were before the state courts."  *See Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997).   Nor is it enough to avoid the bar that a "somewhat similar state-law claim was made."  *Bagwell v. Dretke,* 372 F.3d at 755.

Despite a claim's being otherwise barred from federal habeas review by the petitioner's failure to exhaust, a federal court "may resurrect a defaulted claim, and consider its merits" under two narrow exceptions: "cause and actual prejudice" or "miscarriage of justice."   *Bagwell,* 372 F.3d  at 755, 756.   To prove cause sufficient to excuse default, the petitioner must establish that some external impediment prevented him from raising the defaulted claims: "'Cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

As has previously been stated, Moody did not raise the Fifth Amendment issue in any state court proceeding.  On direct appeal, the court of appeals pointed out that he "argue[d] in vague terms that a prosecutor must 'refrain from doing or saying anything that would tend to cause the jury to disfavor the defendant due to matters other than evidence relating to the crime.'"  *Moody,* 838 So. 2d at 335 ¶ 42.  Despite that court's observations as to a possible improper interpretation of the remarks and his failure to "advance that argument,"  Moody did not raise the issue in his application for post conviction relief.  As he has not even attempted to explain this failure, he certainly has not shown any external impediment and, therefore, cannot be deemed to have established the requisite cause for his procedural violation. *See Bagwell,* 372

F.3d  at 756; *see also Saahir v. Collins,* 956 F.2d 115, 118 (5th Cir. 1992)(holding that neither *pro se* status nor ignorance of the law establishes cause).  That cause has not been shown renders consideration of prejudice unnecessary.  *Saahir*, 956 F.2d at 118  ("A court need not consider whether there is actual prejudice if the petitioner fails to show cause.").

The fundamental miscarriage of justice exception is "concerned with actual as compared to legal innocence" and applies only in "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime."  *Callins v. Johnson,* 89 F.3d 210, 213 (5th Cir. 1996)(citation omitted).   Being confined to "cases of actual innocence," the exception  requires the petitioner to show "as a factual matter, that he did not commit the crime of conviction."  *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999).  This showing requires "new, reliable evidence that was not presented at trial"[12] and that would show it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id.* at 644;  *see also Callins v. Johnson,* 89 F.3d at 213(stating that "a petitioner must *supplement* a constitutional claim with a 'colorable showing of *factual* innocence'"); *Johnson v. Hargett,* 978 F.2d 855, 859 &  n. 18 (5th Cir. 1992) (distinguishing factual and legal innocence and noting that "actual innocence requires more than showing of constitutional error, even when the verdict would have been different absent error").

Moody challenges the sufficiency of the evidence,[13] claims that he was "threatened with death if [he] didn't help his older co-defendant in the crimes," [14] and argues that he "really did

---

[12] Such evidence includes "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence."  *Fairman*, 188 F.3d at 644.

[13] Petition at 7 para. G.

[14] Petition 9 para. J.

not know what was going on and did not willfully participate in any crime,[15] but he does not

claim actual innocence nor does he offer any "new and reliable" evidence sufficient to

"supplement[] his constitutional claim with a factual showing that he did not commit capital

murder." *See Callins v. Johnson,* 89 F.3d at 214. As a result,  Moody's contentions relate, at

best, to a claim of *legal* innocence; they do not establish *actual* innocence.   Under these

circumstances, this court's being procedurally barred from reviewing the merits of Moody's

unexhausted Fifth Amendment claim does not result in a fundamental miscarriage of justice

sufficient to excuse his default.  *See Bagwell v. Dretke,* 372 F.3d 748, 757 (5th Cir. 2004)

(finding no miscarriage of justice where no factual innocence argument had been made).

Notwithstanding the procedural bar, were the court to consider on its merits Moody's

claim that the prosecutor's comment denied him his Fifth Amendment right to remain silent, the

court would nonetheless find that habeas relief is not available on this issue.  As to whether the

prosecutor's comment was constitutionally impermissible, it is axiomatic that comment by the

prosecution on an accused's silence is forbidden by the Fifth Amendment.  *Griffin v. California,*

380 U.S. 609, 615 (1965).  However, any allegation that a prosecutor has made such an improper

comment must be examined in context to determine whether it falls outside  the "area of

legitimate comment" that the prosecutor is allowed.  *See United States v. Robinson,* 485 U.S. 25,

32-33 & n.5 (1988) (noting that "a reference to the defendant's failure to take the witness stand

may, in context, be perfectly proper")(citations omitted).  To succeed on a claim like the one

made in this case, the petitioner must show that "the prosecutor's manifest intent was to

comment on the defendant's silence or...the character of the remark was such that the jury would

naturally and necessarily construe it as a comment on the defendant's silence."  *United States v.*

---

[15] Reply [17] at 3 para. 1.

*Grosz,* 76 F.3d 1318, 1326 (5th Cir. 1996).

Also a consideration with respect to evaluation of alleged prosecutorial misconduct is the Supreme Court's instruction that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974).  Consequently, "this Court may not find that [the prosecutor] manifestly intended to comment on the defendant's silence...[i]f there was a plausible explanation for [the] comment." *United States v. Martinez,* 894 F.2d 1445, 1451 (5th Cir. 1990); *see also Rivera v. Collins,* 934 F.2d 658, 661 (5th Cir. 1991)(holding that the challenged statement did not "implicate constitutional concerns" where there was "another plausible explanation"for it).

As to the jury's possible construction of the challenged remark: "[T]he question is not whether the jury possibly or even probably would view the challenged remark in this manner [as a comment on the defendant's silence] but whether the jury *necessarily* would have done so." *United States v. Grosz,* 76 F.3d 1318, 1326 (5th Cir. 1996) (citations and internal quotations omitted).  An additional consideration in this regard is that when a jury has been instructed that the defendant's silence at trial cannot be taken as an implication of his guilt,[16] "it is reasonable enough to expect a jury to comply with that instruction, since...the inference of guilt from silence is not always 'natural or irresistible.'" *Portuondo v. Agard,* 529 U.S. 61, 67 (2000).

In this case, prefatory to the objectionable comment, the prosecutor had made a number of remarks relative to David Moody's videotaped statement and the physical evidence of the

---

[16] Such an instruction was given in this case. R. 253; Tr. 1162: 7.

crime.[17]  Following the comment, outside the presence of the jury, defense counsel stated his

objection:  "[N]ow, in opening statement, with that statement, he has alluded to and practically

made it a requirement for David Moody to address the absence of his semen.  And I understand

we've got independent scientific proof and all that, but out of an abundance of caution, for my

client I move for a mistrial."  Tr. 652: 7-12.   In response the prosecutor explained:

> I was alluding to the statement.  I do not want to say anything that is not based on the
> evidence or that could comment on his right not to testify.  Now, they're going to hear
> that.  That piece of evidence is going to come in.  I was clearly referring to that statement,
> to his videotaped statement.  I just got through saying that's what we're going to show
> them.  We're going to show them the video.  They're going to hear it from his own
> mouth.  They're going to hear exactly what happened down there... .  Tr. 652: 21–653: 1.

The exchange continued with the defense attorney's argument:

> There's nothing in the statement that Mr. Price is now talking about, which has been
> video recorded, which deals with the semen or anything else which he had alluded to
> before. [H]e's now placed the burden on David to have to get up there and explain
> himself.  That's obviously what the jury is going to take that for.  Tr. 653: 7-13.

Responsive to the defense's concerns (Tr. 653: 14-19), the court issued a precautionary
instruction:

> I have instructed you about this several times when we were picking the jury, and I think
> you all told me under your oath that you understand the law of this state to be that this
> defendant, like all criminal defendants, is not required to take the stand and testify at all.
> And I will just remind you once again that that is the law of this state, and do you
> understand that to be the law? (JURORS RESPOND AFFIRMATIVELY)  And if there
> has been any extraneous reference or any reference by you to construe it to be that, do you
> also understand that you're to totally disregard anything that would be mentioned
> concerning his failure to testify?  (JURORS RESPOND AFFIRMATIVELY) Tr. 654:
> 19–655: 6.

Having viewed in context the remark Moody challenges, this court concludes that it was

not intended as a comment on the defendant's silence or that the jury would naturally and

necessarily have construed it as such a comment.  The "immediate context illuminates the

---

[17] *See* note 10.

meaning"[18] of the remark:  It refers to Moody's videotaped statement to law enforcement–which had already been ruled admissible–and independent physical evidence that the crime had occurred.  Consequently, this claim provides no basis for habeas relief.  *See Coble v. Dretke*, 444 F.3d 345, 352 (5th Cir. 2006) (holding meritless claim of improper comment where there was an alternate explanation and no "indication that the prosecutor was referring to Coble's failure to testify"); *Grosz,* 76 F.3d at 1327 (holding that statement read in context was not improper where there was an alternate explanation for it).

CLAIMS DETERMINED ON STATE LAW GROUNDS

In the habeas context, a federal court cannot "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.  This rule applies whether the state law ground is substantive or procedural."  *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).  Were it otherwise, "a federal district court would be able to do in habeas what [the Court] could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of the Court's jurisdiction and a means to undermine the State's interest in enforcing its laws."  *Id.* at 730-31.

**Procedural Bar:**

The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment rests on independent and adequate state procedural grounds."  *Coleman v. Thompson,* 501 U.S. at 729-30.  Although

---

[18]*Grosz,* 76 F.3d at 1327

application of the doctrine implicates section 2254(b)'s exhaustion requirement,[19] "a habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Id.* at 732.   Concerns that "the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights" and that "the federal and state courts are equally bound to guard and protect rights secured by the Constitution" are concerns that "apply to federal claims that have been procedurally defaulted in state court." *Id.* at 731.  Consequently, the independent and adequate state ground doctrine "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Id.* at 732.

In this case, Moody argues by way of his petition that the trial court erred by failing to transfer the case to Youth Court (ground four), by not granting a mistrial for the prosecutor's improper comments in closing argument (ground six), by granting jury instruction S-8 (ground nine), and by failing to grant a new trial (ground eleven).  On direct appeal, the Mississippi Court of Appeals held each of these claims procedurally defective and declined to consider them on the merits:  the claim raised in ground four because the defendant made the motion to transfer but did not obtain a ruling on it;[20] in ground six because no contemporaneous objections were made;[21] in ground nine because the objection at trial was different from the one argued on appeal,[22] and in ground eleven because the defendant failed to support his arguments with

---

[19] With reference to this "additional concern" the Supreme Court pointed out that it has "long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Id.* at 731.

[20] *Moody,* 838 So. 2d at 334 ¶ 38.

[21] *Moody,* 838 So. 2d at 335 ¶ 43.

[22] *Moody,* 838 So. 2d at 337 ¶ 50.

citations to the record or to legal authorities.[23]

Moody now seeks habeas relief on the basis of his claims that these errors violated certain of his constitutional rights.  However, because Moody "has failed to meet the State's procedural requirements for presenting his federal claims [he] has deprived the state courts of an opportunity to address those claims in the first instance." *Rosales v. Dretke,* 444 F.3d 703, 707 (5th Cir 2006).  When "a state court declines to hear a prisoner's...claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment."  *Sayre v. Anderson,* 238 F.3d 631, 634 (5th Cir 2001).  When, as in this case, the state court "clearly and expressly states that its judgment rests on a state procedural bar, a presumption arises that the state court decision rests on independent and adequate state law grounds."  *Pitts v. Anderson,* 122 F.3d 275, 279 (5th Cir. 1997).  The petitioner may overcome this presumption by establishing that the "the state did not strictly or regularly follow a procedural bar around the time of his direct appeal" and that "the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself."  *Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir. 1997).  As Moody has made no such assertions, much less the requisite showing,[24] this court cannot do other than conclude that Moody's failures to comply with Mississippi's procedural rules acted as independent and adequate grounds for the court of appeals' decision[25] and precludes habeas

---

[23] *Moody,* 838 So. 2d at 338 ¶¶ 57-58.

[24]  In contrast, the respondents have catalogued the cases in which Mississippi's appellate courts have applied the described procedural bars.  Answer [11] at 10-11 n. 6.

[25] Even where alternative holdings are provided, "including a decision denying the claim on its merits...[i]t is clear in this Circuit that alternative rulings do not operate to vitiate the validity of a procedural bar that constitutes the primary holding."  *Corwin v. Johnson,* 150 F.3d 467, 473 (5th Cir. 1998).

consideration of the barred claims.  *See Foster v. Johnson,* 293 F.3d 766, 790 (5th Cir. 2002);

*Pitts v. Anderson,* 122 F.3d 275, 279 (5th Cir. 1997)(both affirming denial of habeas relief on

state procedural ground); *see also Smith v. Cockrell,* 311 F.3d 661, 684 (5th Cir. 2002)[26] (stating

that "so long as the last state court rendering a judgment in the case clearly and expressly states

that its judgment rests on a state procedural bar, we can conclude that the state court rested its

decision independently on the state procedural grounds" and declining to reach the merits of a

claim held by the state court to be procedurally barred).

**Issues of State Substantive Law:**

To the extent that a petitioner simply challenges the correctness of an application of state

law, he "allege[s] no deprivation of federal rights and may not obtain habeas relief" under 28

U.S.C. § 2254. *Engle v. Isaac,* 456 U.S. 107, 119 (1981).  A state's interpretation of its own laws

or rules provides no basis for federal habeas corpus relief since no constitutional question is

involved.  *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. 1981).   Because a federal

habeas court "takes the word" of the state's highest court as to interpretation of its law on

criminal matter and does not "sit to review" that interpretation,[27]  this court must "defer to [the]

implicit conclusion and interpretation of state law" by the state court.  *Young v. Dretke,* 356 F.3d

616, 628 (5th Cir. 2004).

**Quash Indictment:**

Contending that the trial court erred by failing to quash the indictment (ground seven),

Moody casts this claim in constitutional terms by claiming denial of due process.[28]   However,

---

[26] *Overruled on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

[27] *Jackson v. Anderson,* 112 F.3d 823, 825 (5th Cir. 1997)(affirming denial of habeas relief).

[28] Petition at 7-8 para. G.

seen in its true light, it is nothing more than a claim of violation of state law which is barred from review by this court.  This is so because–as the Supreme Court has long recognized–a "mere error of state law is not a denial of due process."  *See Engle v. Isaac,* 456 U.S. at 121 & n.21.[29]

Moody's challenge to the indictment rests on his contention that it did not allege that the victim was of previously chaste character, one of the elements of rape, which is the underlying crime making the murder a capital offense.[30]  Considering this claim on direct appeal, the court of appeals looked to supreme court authority finding an analogous indictment "sufficient to inform the defendant of the nature of the charge brought against him." *Moody,* 838 So. 2d at 336 ¶ 44 (citing *Mackbee v. State,* 575 So. 2d 16 (1990)).  Finding "no basis to distinguish *Mackbee,*" the court concluded that "the allegation that the murder occurred during the commission of the crime of rape against the female victim was sufficient." *Moody,* 838 So. 2d at 336 ¶ 45.

This court gives short shrift to Moody's claim for federal habeas relief on this claim:  The Fifth Circuit "adhere[s] to the rule that a federal habeas court will not consider such claims"[31] if the question of the sufficiency of the indictment has been presented to the state courts and the indictment has been found sufficient under state law.  *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994).  Moody presented his defective indictment claim to the Mississippi Court of Appeals, and the Mississippi Supreme Court denied certiorari.  Thus, the issue was found to be without merit by the state's highest court and is foreclosed from federal habeas review.  *See Morlett v. Lynaugh,* 851 F.2d 1521, 1523 (5th Cir. 1988).

---

[29] The Court further stated: "If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question.'" *Id.* (citations omitted).

[30] Petition at 8 para. G; *Moody,* 838 So. 2d at 336 ¶ 44.

[31] *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985).

Because it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and also because Moody's state court conviction was not obtained in violation of any federal constitutional rights as to the claim raised in ground seven, habeas corpus relief under section 2254 is not available to him on that ground. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

### ANALYSIS OF THE REMAINING ISSUES AND THE APPLICABLE LAW

By his petition, Moody raises a number of claims that were addressed on their merits, and rejected,  by the Mississippi Court of Appeals.[32]  These claims are therefore placed beyond the reach of this court's authority to grant habeas relief, limiting it to a determination of whether the court of appeal's decision involved an unreasonable application of clearly established *federal* law or was contrary to such law.  28 U.S.C. § 2254(d)(1).  As discussed below, Moody cannot circumvent the bar to federal habeas review by bringing these claims within this narrow exception.

**Speedy Trial:**

Moody argues in ground one of his petition that he was denied his sixth amendment right to a speedy trial.  On direct appeal, the court of appeals determined the merits of this claim on the basis of the factors set out in the United States Supreme Court's decision of *Barker v. Wingo,*

---

[32] Although it may appear that those claims are also subject to the independent and adequate state ground doctrine by the supreme court's disposition of Moody's post-conviction motion on the basis of Miss. Code Ann.  § 99-39-27(5), the Fifth Circuit has held that that statute cannot be given such an effect.  *See Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir. 1997) (holding claims barred by application of § 99-39-27(1)).

407 U.S. 514 (1972), which governs review of such speedy trial claims.[33]  Accordingly, the issue

for determination by this court is limited to whether the court of appeals' rejection of Moody's

claims that his speedy trial rights were violated was an unreasonable application of *Barker v.*

*Wingo* to the facts of Moody's case.

A defendant's constitutional right to a speedy trial is "triggered by arrest, indictment, or

other official accusation."  *Doggett v. United States,* 505 U.S. 647, 655 (1992); *see also Nelson v.*

*Hargett,* 989 F.2d 847, 851 (5th Cir. 1993) (recognizing that "a defendant's right attaches at the

time of arrest or indictment, whichever comes first").  In *Barker*, the Supreme Court established

the four-part balancing test to be used for determining whether a defendant received a speedy

trial within the meaning of the Sixth Amendment. *Knox v. Johnson,* 224 F.3d 470, 477 (5th Cir.

2000).  The *Barker* analysis requires the court to consider "length of delay, the reason for the

delay, the defendant's assertion of his right, and prejudice to the defendant."  *Barker*, 407 U.S. at

530.  Although the factors must be "considered together with such other circumstances as may be

relevant," and no single factor may be treated as determinative of the issue,[34] the first factor– the

length of the delay–does serve as the "triggering mechanism.  Until there is some delay which is

presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the

balance."  *Id.* at 530.  The *Barker* Court could not, however, "definitely say how long is too long

in a system where justice is supposed to be swift but deliberate." *Id.* at 52.  In the Fifth Circuit,

"A delay of less than one year will rarely qualify as 'presumptively prejudicial' for purposes of

triggering the *Barker* inquiry."  *Knox v. Johnson,* 224 F.3d at 477 (quoting *Cowart v. Hargett,* 16

F.3d 642, 646 (5th Cir. 1994)).  Once a court "undertakes a full *Barker* analysis," it "weigh[s] the

---

[33] *Moody,* 838 So. 2d at 329 ¶ 11.

[34] *Id.* at 533.

20

first three...factors against any prejudice suffered by the defendant due to the delay in prosecution." *United States v. Frye,* 372 F.3d 729, 736 (5th Cir. 2004).

Consideration of the factors and the court of appeals' treatment of them reveals that its decision was not an unreasonable application of *Barker* and therefore that habeas relief may not be granted by this court.   As to the first factor: being more than one year, the delay between Moody's arrest on May 18, 1995 and the commencement of his trial on February 14, 2000 may be regarded as "presumptively prejudicial" for purposes of prompting examination and balancing of the remaining factors.   *Robinson v. Whitley,* 2 F.3d 562, 568 (5th Cir. 1993). This presumption does not, however "warrant an immediate conclusion that the defendant has been denied his Sixth Amendment right to a speedy trial." *Id.*   The Fifth Circuit has held that prejudice from delay may rise to this level "only in cases in which the post-indictment delay lasted at least five years." *United States v. Serna-Villarreal,* 352 F.3d 225, 232 (5th Cir. 2003).   In this case, even counting from the date of Moody's arrest, instead of from the date of his indictment,[35] the delay "is too short to weigh heavily in favor of a finding of presumed prejudice." *Id.*   Neither do the "facts at hand provide...reason to depart from that guideline" since "for a significant part of the period [until August 5, 1999] [Moody's] trial was joined with [Kenneth Moody's], who faced the death penalty." *See United States v. Frye,* 372 F.3d 729, 737 (5th Cir. 2004).

In the evaluation of the second factor–reason for the delay–"[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government" as should "delay to gain some tactical advantage over (defendants) or to harass them." *Barker,* 407 U.S. at 531 & n. 32(citations omitted).   A "more neutral reason such as...overcrowded courts should be weighted less heavily but nevertheless should be considered," while "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at

---

[35] Moody was indicted on August 1, 1995.

531. The defendant's own conduct must be factored into this part of the analysis. *Barker,* 407

U.S. at 529; *Doggett,* 505 U.S. at 651 (defining one of the "four separate enquiries" as being

"whether the government or the criminal defendant is more to blame for [the] delay").

     In this case, the court of appeals found that the reasons for the delay should not be

attributed to the State, not just because Moody consented to some of the delay[36] but also because

other delays arising from changes in defense attorneys and prosecutors were "the sort of things

that inevitably arise and there is no evidence that the necessary transitions were unduly delayed

without justification." *Moody,* 838 So. 2d at 331 ¶ 17.  With respect to what the court referred to

as the "bulk of the period of delay"[37] the court rejected the characterization of the situation as an

attempt to "obtain an unfair tactical advantage" concluding instead that "it simply cannot be

fairly contended that the delay occasioned by the effort to obtain the eyewitness testimony of

Kenneth Moody in this criminal prosecution was attributable to the State for purposes of *Barker*

analysis." *Moody,* 838 So. 2d at 330 ¶ 15.[38]  The *Moody* court concluded that the delays should

not be "counted against the State in weighing whether the State, either purposely or through

inexcusable procrastination, delayed bringing its prosecution of David Moody to trial."  *Id.* at ¶

---

[36] *Moody,* 838 So. 2d at 330 ¶ 16 (stating that "both the motion and the trial court's order...indicate acquiescence on the part of the defense").

[37] "The bulk of the period of delay in bringing David Moody to trial was occasioned by the fact that...the State filed a motion for continuance in David Moody's prosecution, alleging that [his co-defendant] Kenneth Moody was potentially a material witness in the case and asking that a trial date for David Moody be delayed until the availability of Kenneth Moody could be determined–a question that could not be answered until the appeal underway regarding Kenneth Moody's plea agreement was resolved."  *Moody,* 838 So. 2d at 330 ¶ 14.  This appeal resulted from the trial court's refusal of a plea agreement whereby Kenneth Moody would testify against David Moody.  R. 66-67; Tr. 49-51.  According to the *Moody* court, the case "was ultimately decided in favor of the State's position." 838 So. 2d at 329 ¶ 13.

[38] The court also noted that "the appeal came at a time when the appellate system of the State was experiencing substantial delays brought on by an excessively crowded docket that had existed for a number of years."  *Id.*

17. This conclusion is consistent with *Barker*: "Where the state advances valid reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state. There has been no showing that the state intentionally delayed the proceedings in this case.[39] Unexplained or negligent delay is weighed against the state, but not heavily. Thus, if there is any advantage to [Moody] from this factor, it is small." *Cowart v. Hargett,* 16 F.3d 642, 647 (5th Cir. 1994); *see also United States v. Hernandez,* 457 F.3d 416, 421 (5th Cir. 2006) (holding that continuances arising from the Government's unsuccessful actions "to secure the testimony of a material witness" did not show "bad faith"); *United States v. Frye,* 372 F.3d 729, 737 (5th Cir. 2004)(noting that "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay").

The third factor addresses the defendant's assertion of his right to a speedy trial. Relative to this factor, the *Barker* Court instructed that the "defendant's assertion of his speedy trial right...is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right," but it also emphasized that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532.

The Mississippi Court of Appeals weighed this factor against Moody. The court found that Moody's *pro se* filing of a proceeding in federal court[40] did not constitute an assertion of the

---

[39]At the hearing on Moody's speedy trial motion, with reference to the "over a year and two or three months' delay from the date of the mandate" in the Kenneth Moody appeal, David Moody's attorney commented: "All during this time, Your Honor–and I want the record to be clear that I certainly don't fault Mr. Price [the special prosecutor] in any of this–but the discovery process has been labor intensive and difficult at best." Tr. 45: 18-28. He also acknowledged that the State had sought trial settings on two occasions (R. 74, 78) but claimed that the State could not have been ready to go to trial when the requests were made because "discovery was not complete at that time." Tr. 45: 28–46: 6.

[40] Moody's attorney, who had been appointed to represent him prior to the continuance (R. 64, 70), was unaware that he had filed the action. It was filed on May 13, 1998 and

right and reiterated its earlier conclusion that "Moody was agreeable to delay his trial until the

matter of the availability of Kenneth Moody as a witness was resolved by the Mississippi

Supreme Court." *Moody,* 838 So. 2d at 331 ¶ 18.[41]  Although the court acknowledged that

Moody had filed a motion to dismiss[42] on the basis of the claimed violation of his speedy trial

right, it did not count that motion a sufficient assertion of the right, particularly coming as it did

"somewhat late in the proceeding."  *Moody,* 838 So. 2d at 331 ¶ 19.

      The state trial court record does not indicate that any contention was raised by the

defendant in that court as to the timeliness of his trial until August 3, 1999,[43]  nor does it indicate

that any action was undertaken to expedite the commencement of his trial.  Even when the

speedy trial issue was raised, it was not to obtain a speedy trial but to obtain dismissal of the

charges against Moody.  However, "an assertion that charges be dismissed for a speedy trial

violation is not a value protected under *Barker*."  *Cowart v. Hargett,* 16 F.3d 642, 647 (5th Cir.

1994) (giving this factor "strong evidentiary weight in favor of the state").  Even had the issue

been raised before the motion was filed, the "discussion and awareness of the right is not the

_____

dismissed on July 13, 1998.  Tr. 29: 9-27.

    [41] Although Moody's former attorney had filed a Motion to Sever on August 24, 1995 (R. 39), shortly after Moody's indictment, that motion was not brought up for consideration by the trial court until December 15, 1998, (Tr. 12-13), six months after the mandate had issued in the Kenneth Moody appeal.

    [42]The motion was filed on August 3, 1999, more than a year after the supreme court issued the mandate in the Kenneth Moody appeal.  R. 198; Tr. 28: 26–29: 4.

    [43] On February 8, 1999, the trial court conducted a hearing for the purpose of trial settings.  Tr. 14. Counsel for David Moody indicated that he would "have a break in [his] calendar in August." Tr. 15.  After some discussion about change of venue and outstanding discover, he agreed to an August 30 setting.  Tr. 16-19.  On August 5, 1999, the trial court entered an order granting the defendants' motions for severance and setting David Moody's trial for August 30, 1999. R.199.  Although the record is not entirely clear, it appears that that trial date was continued, in part, for a hearing on his speedy trial motion, which occurred on September 30, 1999. Tr. 56-57.

relevant factor; the relevant factor is when and how a trial request is made to the court." *United States v. Frye,* 372 F.3d 729, 739 (5th Cir. 2004)(holding erroneous the trial court's finding this factor in favor of the defendant where he "did not claim the speedy trial right in order to obtain a speedy trial, but in order to have the indictment dismissed"); *see also Robinson v. Whitley,* 2 F.3d 562, 569-70 (5th Cir. 1993)(Even where the defendant "peppered the court with speedy trial motions" the court considered his waiting twelve months after arrest to file his first speedy trial motion and his "post-indictment continuances to outweigh whatever weight would ordinarily be due his speedy trial assertions.").

The final *Barker* factor requires examination of the degree of prejudice suffered by the defendant as a result of the delay between accusation and trial.  In this case, prejudice cannot be presumed "because the first three *Barker* factors do not cut strongly in [Moody's] favor." *United States v. Hernandez,* 457 F.3d 416, 422 (5th Cir. 2006).  Accordingly, he "must make an affirmative showing of actual prejudice." *Cowart,* 16 F.3d at 647.  This showing is made with reference to the three interests protected by the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," *Barker,* 407 U.S. at 532, "by dimming memories and loss of exculpatory evidence." *Doggett,* 505 U.S. at 654.

The court of appeals found prejudice with respect to the first interest and weighed it against the State "since the period of confinement in this trial was, by any measure, substantial."[44]  However, as has previously been discussed, the delay in this case, while sufficient to require analysis of the remaining *Barker* factors, was not so lengthy as to eliminate the requirement that the plaintiff make a showing of actual prejudice.  *See Frye,* 372 F.3d at 738

---

[44] *Moody,* 838 So. 2d at 331 ¶ 21.

(recognizing that federal courts generally presume prejudice only when the delay exceeds five years).  Despite its finding that the "fact of pre-trial confinement during any periods of delay is evidence of actual prejudice to the defendant," the court of appeals tempered its finding of prejudice:

> [T]here is every indication that the State proceeded with reasonable dispatch to work out ... matters [causing delay] and get the case into a triable posture.  We decline to sanction a situation where the defendant sits silently and without objection through a lengthy appellate proceeding, the outcome of which has the potential to directly affect that nature of the case presented against him, then belatedly seeks to avoid ever having to face the charges brought against him because of the length of time it ultimately took to resolve the appeal.

*Moody,* 838 So. 2d at 331-32 ¶¶ 21, 22.

The court of appeals did not address the second interest–minimization of anxiety and concern.  According to the Fifth Circuit, "vague allusions" and "conclusory statements" relative to claimed anxiety "are insufficient to establish prejudice under *Barker* and its progeny."  *Nelson v. Hargett,* 989 F.2d 847, 853 (5th Cir. 1993).  Thus, to the extent that Moody may have relied on "the anxiety inherent in any delay," this form of prejudice "[s]tanding alone...is insufficient to warrant reversal."  *United States v. Hill,* 622 F.2d 900, 910 (5th Cir. 1980); *see also United States v. Bieganowski,* 313 F.3d 264, 285 (5th Cir. 2002) (holding that claims of "psychological and economic strain" are insufficient to establish necessary prejudice); *Cowart v. Hargett,* 16 F.3d 642, 647 (5th Cir. 1994) ("Anxiety about one's reputation and private life during pretrial delay...will not alone suffice to warrant a reversal of a conviction.").

As to the third interest–limitation of impairments to Moody's defense–the court of appeals recognized that "unavailability of witnesses" is a "factor in assessing actual prejudice" but rejected Moody's claim that he had been prejudiced "because his father died after his arrest but before he was brought to trial."  *Moody,* 838 So. 2d at 332 ¶ 23.  The reasons that this claim

26

did not find favor with the court are detailed in its opinion:

> Moody cites to nothing that his father could have testified about regarding his
> innocence of the criminal charges.  Apparently, Moody's father was a prospective
> witness in the nature of a character witness in the penalty phase of this capital
> murder prosecution.  However, since Moody did not receive the death penalty, the
> unavailability of his father to testify in an attempt to avoid the death penalty is
> moot.  Without a proffer of what probative information Moody's father may have
> possessed regarding Moody's guilt or innocence of the charges themselves, we
> cannot speculate as to what this potential witness *might* have been able to say of
> benefit to the defense.

*Moody,* 838 So. 2d at 332 ¶¶ 23-24.  Under circumstances such as these, it has been held that

> It is difficult to give much weight to any allegation of prejudice resulting from an
> inability to call this witness to testify.  It certainly does not demonstrate actual
> prejudice.  Moreover, such arguments are generally viewed with disfavor when, as
> here, the allegation is not supported by the production of the witness who
> allegedly would have altered the outcome of the trial.

*Cowart v. Hargett,* 16 F.3d at 648; *see also Knox v. Johnson,* 224 F.3d 470, 477 (5th Cir. 2000)

(holding that the defense's inability to present a witness who "could not have supplied an alibi

defense" did not constitute prejudice); *Robinson v. Whitley,* 2 F.3d 562, 571 (5th Cir. 1993)

(rejecting claim of prejudice from loss of witnesses, stating: "Even assuming these individuals

could have and would have provided exculpatory testimony, either [Defendant] or his attorney

should have taken adequate steps to preserve their testimony for trial").  The outcome of all of

this is not only that prejudice to Moody's case or to the interests protected by the right to a

speedy trial cannot be presumed but also that Moody has failed to demonstrate that he suffered

actual prejudice as a result of any delay.  *See Cowart v. Hargett,* 16 F.3d at 647-48

As it was required to do,[45] the court of appeals balanced "all of the factors regarding a

Sixth Amendment speedy trial claim" to reach the conclusion that "Moody has [not] made the

necessary showing that the State deprived him of a speedy trial under circumstances that would

---

[45] *Barker v. Wingo*, 407 U.S. at 533.

require this Court to set aside his convictions and discharge him from confinement."  *Moody,* 838

So. 2d at 332 ¶ 25.  Having reviewed the *Barker* factors and the Mississippi Court of Appeals'

analysis of them, this court finds that the court of appeals' decision does not constitute an

unreasonable application of *Barker* to the facts of this case and accordingly that no habeas relief

may be granted on the basis of Moody's speedy trial claim.[46]

---

[46] The *Barker* Court affirmed denial of a habeas petition where it determined that the defendant was not seriously prejudiced by a more-than-five-year delay and that his speedy trial right had not been violated even though more four years of the delay was attributable to the prosecution's failure to try his accomplice in order to secure the accomplice's testimony .  Where Barker failed to object to continuances prior to the accomplice's conviction's becoming final and filed a motion to dismiss rather than one for immediate trial, the Court described his actions as "gambling on [the accomplice's] acquittal."  407 U.S. at 535.  Although the Court did not hold "that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances" it opined that "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Id.* at 536.  *See also Robinson v. Whitley,* 2 F.3d 562, 571 (5th Cir. 1993): "Although the total delay was approximately forty-four months, it is Robinson who properly should bear responsibility for the greater part of the delay.  And it is our belief that the Sixth Amendment does not permit a criminal to take advantage of a delay that his own conduct occasioned."

**Suppression of Statement:**

In ground two, Moody charges as error the trial court's failure to suppress the statements he gave to law enforcement officers on May 18, 1995. He claims that his Fifth Amendment right against self-incrimination was violated as was his right under Mississippi's Youth Court Act to have an attorney, guardian or other authorized person  present during questioning.[47]   As violation of state law is not a ground for habeas relief, this court's sole concern is whether the Mississippi Court of Appeals' decision that Moody waived his constitutional right against self-incrimination and voluntarily confessed was contrary to or an unreasonable application of clearly-established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254 (a), (d)(1).[48]

Although the court of appeals made bare mention of  Moody's *Miranda* rights,[49] its decision was not informed by reference to any United States Supreme Court precedent. However, this court's "contrary to/unreasonable application" analysis is unaffected by this absence:

> A state-court decision is 'contrary to' our clearly established precedents if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.' Avoiding these pitfalls does not require citation of our cases–indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Early v. Packer,* 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406

---

[47] Petition at 5 para. B.

[48] Also a consideration is the presumption of correctness due the state court's findings of fact absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  *See Pruett v. Thigpen,* 665 F. Supp. 1254, 1268 (N.D. Miss. 1986), *aff'd,* 805 F.2d 1032 (5th Cir. 1986) (where both the trial and appellate court had found confessions voluntary, stating that "a state court's finding that a defendant's confession was voluntary precludes federal habeas relief unless it can be found that the state record did not fairly support the finding of voluntariness").

[49] *Moody,* 838 So. 2d at 332 ¶ 28.

(2000)).

In Moody's pretrial Motion to Suppress the Defendant's Statements, the offered basis for the suppression was that "on May 18, 1995, the Defendant was fourteen years of age, and therefore, not of an age to appreciate the nature and consequences of his action, nor did he understand the rights afforded to him under the Constitution of the United States and the Constitution of this State." R. 205. The trial court conducted a hearing on the motion and thereafter overruled it in an order which recited that the court "heard testimony, watched and listened to a video tape of such statement and reviewed notes taken contemporaneously with the taking of such statement, all on proffer by the State in support of the statement." R. 233. Based upon the findings enumerated in the order and "upon the totality of the circumstances," the court found that "the Defendant's statement of May 18, 1995, was knowingly, intelligently, and voluntarily given without any threats, promises or offers of reward." R. 235.[50]

On its review of the issue, the court of appeals affirmed the trial court's finding that Moody's statement was voluntarily given. It acknowledged that "[c]ertainly, the fact that Moody was only fourteen years of age is a proper element for the court to consider in assessing the informed nature of the waiver of rights. However, age alone is not conclusive of the question." *Moody,* 838 So. 2d at 333 ¶ 32. Referring to the evidence that had been offered in support of the statement and the trial court's consideration of that evidence, the appellate court held that the "court found that evidence believable and we have no basis on this record to conclude that this determination was in error." *Moody,* 838 So. 2d at 333 ¶ 31.

Whether the statement under consideration on a motion to suppress is that of an adult or of a juvenile, the Supreme Court has defined the analysis to be undertaken in determining

---

[50] The order was also read in open court. Tr. 152-154.

whether the defendant has knowingly and voluntarily waived his *Miranda* rights:

> [T]he determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel.

*Fare v. Michael C.*, 442 U.S. 707, 724-25 (1979).  According to the Court the totality-of-the-circumstances approach

> permits–indeed, it mandates–inquiry into all the circumstances surrounding the interrogation.  This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Fare v. Michael C.*, 442 U.S. at 725.

From this it is clear that what is required is that the trial court consider the totality of the circumstances to decide whether a statement should be suppressed.  In this case, the trial court said that it did; its order reflects that it did, and the court of appeals did not disagree: "Based on the totality of the evidence, we are unable to conclude that the trial court erred in determining that the State had met its burden to defeat Moody's claim that his statement was inadmissible based on a violation by the State of his right against self-incrimination afforded him under the constitution."  *Moody,* 838 So. 2d at 333 ¶ 32.  All that was required to be done by the state court having been done and its conclusion of admissibility being supported by the evidence,  Moody is not entitled to habeas relief on the basis of his Fifth Amendment claim.

**Denial of Severance:**

In ground three, Moody charges that the trial court's failure to sever denied him a fair trial because he was required to "stand trial for two counts of capital murder at the same time." A starting point in the consideration of a habeas claim based on denial of severance is that the

court is "not concerned with the [state] law concerning joinder of offenses since [its] inquiry must be limited to [petitioner's] rights to a fair trial under the United States Constitution." *Breeland v. Blackburn,* 786 F.2d 1239, 1240 (5th Cir. 1986).[51]   It must also be recognized that "whether to grant a motion to sever is within the discretion of the trial court" and that the trial court is "required to sever only in cases of compelling prejudice." *Procter v. Butler,* 831 F.2d 1251, 1256 (5th Cir. 1987).   Additionally, "the burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed by a reviewing court." *Id.*  For a result different from this, "the simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate." *Alvarez v. Wainwright,* 607 F.2d 683, 685 (5th Cir. 1979).

Considered in the light of these standards, it is clear that Moody's bald allegation of prejudice will not suffice.  *See Procter v. Butler,* 831 F.2d at 1257 (rejecting "speculative possibility" of prejudice and affirming denial of habeas relief).  Although Moody sought severance on the basis that he was subject to imposition of the death penalty on the capital murder counts, [52] by the time the trial court denied the motion, the death penalty was no longer at issue.  Tr. 242:20–243: 15.  His having failed to otherwise "articulate to the trial court any precise reason why he would be prejudiced by a single trial of all the charges,"[53] this court cannot conclude that the trial court's denial of severance rendered Moody's trial fundamentally unfair.

---

[51] Under Mississippi law, multi-count indictments are permissible.  Miss. Code Ann. § 99-7-2(1) (1972).  The *Breeland* court also described as a "realistic consideration" in cases involving severance issues that "the relationship of the charges grew out of the defendant's own conduct."  *Breeland v. Blackburn,* 786 F.2d at 1241.

[52] R. 126-28.

[53] *Alvarez v. Wainwright,* 607 F.2d at 686.

**Quash Jury Panel:**

Ground five of the petition presents Moody's contentions that extraneous comments by two prospective jurors tainted the entire panel and that it should have been quashed.  In the first instance, one venire member was talking to another and expressed his distrust of attorneys as well as stating that lawyers have "ice water in their veins." Tr. 347-48, 353.   Questioned outside the presence of the panel, he stated the possibility that others could have overheard the comment. Tr. 348.  Following questioning of another juror about what she might have heard and learning that she heard the "ice water" comment (Tr. 350-52), the court conducted voir dire of individual jurors outside the presence of the others.  The jurors were questioned not just about whether they had heard the comments but also about their answers to the jury questionnaire.[54]

Following voir dire of the individual jurors, voir dire continued in the presence of the entire venire.  Having been asked about friends or family members who may have been crime victims,[55] a juror expressed her view that people who commit violent crimes should suffer as much as their victims. Tr. 457: 21-24.  By way of a precautionary instruction, the jury were instructed to disregard the comment. Tr. 465-66.  Asked, none of the jurors indicated that they were prejudiced by the comments or that they felt the same way.  Tr. 466: 1-10.  Voir dire of individual jurors who knew crime victims was then conducted outside the presence of the venire. Tr. 467-493.

Considering whether denial of Moody's motion to quash the venire constituted error, the Mississippi Court of Appeals commended the trial court's handling of the matter:

---

[54] A number of jurors were stricken following individual voir dire, including the one who heard the "ice water" comment.  Tr. 440.  Both commenting jurors were also excused from the panel. Tr. 354,  463.

[55] Tr. 445: 19-26.

The court conducted a thorough inquiry of all potential jurors seeking to determine whether they had been adversely affected in any way by these statements and received individual assurances from enough venire members to seat a jury that the statements had not affected their ability to fairly and impartially decide the case based on the facts and the law. Such matters are left to the sound discretion of the trial court. We can see no abuse of the trial court's discretion in the commendable manner in which these potential problems were handled, permitting the case to proceed to conclusion.

*Moody,* 838 So. 2d at 324 (¶ 39) (internal citation omitted).

To inform its determination of whether Moody was denied his right to a fair trial on the basis of the venire members' exposure to the challenged comments, this court looks to Supreme Court pronouncements on the issue of the trial court's resolution of questions of juror impartiality. That court has held that "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips,* 455 U.S. 209, 217 (1982).

In *Patton v. Yount,* a habeas case involving claims of juror bias from pretrial publicity, the Supreme Court recognized that a trial judge's determinations regarding venire members' bias is essentially a factual determination entitled to deference on collateral review. Defining the pertinent question as being: "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed," the Court noted that "[t]here are, of course, factual and legal questions to be considered in deciding whether a juror is qualified. The constitutional standard that a juror is impartial only if he can lay aside his opinion and render a verdict based on the evidence presented in court is a question of federal law; whether a juror can in fact do that is a determination to which habeas courts owe special deference." *Patton v. Yount*, 467 U.S. 1025, 1036-37 & n.12 (1984).

In *Wainwright v. Witt,* a habeas case which addressed dismissals of potential jurors for cause in a death penalty case,  the Supreme Court reiterated the *Patton* holding that state-court findings of fact are clothed with the presumption of correctness:

> Last term, in *Patton*, we held that a trial judge's finding that a particular venireman was not biased and therefore was properly seated was a finding of fact subject to 2254(d).  We noted that the question whether a venireman is biased has traditionally been determined through *voir dire* culminating in a finding by the trial judge concerning the venireman's state of mind.  We also noted that such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.  Such determinations were entitled to deference even on direct review; '[t]he respect paid such findings in a habeas proceeding certainly should be no less.'

469 U.S. 412, 428 (1985) (quoting *Patton,* 467 U.S. at 1038).  The *Wainwright* Court also noted observations it had made more than a century before that

> the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words.  That is seen below, but cannot always be spread upon the record.  Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case.  The affirmative of the issue is upon the challenger.  Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside, and it will not be error in the court to refuse to do so.

*Wainwright,* 469 U.S. at 428 n.9 (quoting *Reynolds v. United States,* 98 U.S. 145, 156-57 (1879)); *see also Darden v. Wainwright,* 477 U.S. 168 , 178 (1986) (recognizing that the trial court may take into account all the circumstances of voir dire, including the potential juror's demeanor, when making a determination of juror bias).

Supreme Court precedent clearly casts the burden upon the petitioner to rebut the presumption that the findings of the state court on the issue of juror bias were correct.   In this case, Moody falls far short of the requisite showing as he fails to even claim–much less show–that any juror seated in his case was not impartial.  Thus, as did the court of appeals on direct review, so must this court defer to the trial judge's finding that there were sufficient

impartial venire members to seat a jury in this case.  Because the court cannot find that Moody

has made the requisite showing of denial of his constitutional right to be tried by a fair and

impartial jury, the claim raised in ground five affords him no avenue to habeas relief.  *See*

*Chavez v. Cockrell,* 310 F.3d 805, 811 (5th Cir. 2002) (denying request for certificate of

appealability where habeas petitioner "failed to demonstrate that the state court's conclusions as

to juror impartiality are unreasonable"); *Fuller v. Johnson,* 114 F.3d 491, 501 (5th Cir.

1997)(recognizing that the trial court's finding as to juror bias during voir dire is entitled to a

presumption of correctness, finding that the petitioner "simply has not provided enough evidence

to rebut the presumption" and refusing to "upset" the trial court's determination).

**Sufficiency of the Evidence**:

In ground seven of his petition, Moody challenges the sufficiency of the evidence to

support his conviction by claiming that the trial court erred by failing to direct a verdict of

acquittal at the close of the State's case.[56]  He raised this same issue in his direct appeal.  *See*

*Moody,* 838 So. 2d at 336 ¶ 46.  A federal habeas corpus claim alleging that a state court

conviction was based on insufficient evidence is evaluated by reference to standards set out by

the Supreme Court in *Jackson v. Virginia*:

> The critical inquiry on review of the sufficiency of the evidence to support a criminal
> conviction must be...to determine whether the record evidence could reasonably support a
> finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to
> ask itself whether *it* believes that the evidence at the trial established guilt beyond a
> reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in
> the light most favorable to the prosecution, *any* trier of fact could have found the essential
> elements of the crime beyond a reasonable doubt.  This familiar standard gives full play
> to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to
> weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.
> Once a defendant has been found guilty of the crime charged, the factfinder's role as
> weigher of the evidence is preserved through a legal conclusion that upon judicial review

---

[56] Petition at 7 para. G.

*all of the evidence* is to be considered in the light most favorable to the prosecution.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal quotations and citation omitted).

Application of the *Jackson* standard allows a reviewing court to find the evidence sufficient to

support a conviction even when the facts may support an alternative conclusion. *See Gilley v.*

*Collins,* 968 F.2d 465, 468 (5th Cir. 1992).

The Mississippi Court of Appeals did not apply the *Jackson* standard to arrive at its

conclusion that the State had met its burden,  but the standard that it did apply is consistent with

*Jackson*'s protections "against misapplications of the constitutional standard of reasonable

doubt."  *Jackson v. Virginia,* 443 U.S. at 320.  Addressing Moody's claim, the court stated:

> As to the more general claim that the evidence of guilt was insufficient to sustain
> a guilty verdict, we resolve such claims by reviewing the evidence in the light
> most favorable to the prosecution.  In that circumstance, we are satisfied that the
> State presented substantial evidence that, if found credible by the jury, would
> easily establish the commission of each of the elements of the crimes for which
> David Moody stands convicted.

*Moody,* 838 So. 2d at 336 ¶ 46.

Although Moody again insists that the State failed to prove that he was an "active" or

"willing" participant in the two murders,[57] considering the coercion claim "that appeared only in

his pre-trial statements to investigating officers,"  the court of appeals likewise determined:  "The

evidence, viewed in the light favorable to upholding the jury's verdict would also support a

reasonable inference that David Moody participated in each of the critical acts of the crimes,

either by his own actions or by acting as a willing accomplice of Kenneth Moody. ... That the

jury found Moody's claims of coercion implausible on this record is not surprising."  *Moody,* 838

So. 2d at 336 ¶ 46.  It accordingly reached its *Jackson*-like conclusion that Moody's claim "that

---

[57] Petition at 7 para G.

the evidence was insufficient to convict, depending as it does almost exclusively on Moody's unsubstantiated claims of coercion, is without any merit."  *Id.* at ¶ 48.[58]

Where, as here, "a state appellate court has conducted a thoughtful review of the evidence," its determination of the sufficiency of the evidence "is entitled to great deference." *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993) (applying the *Jackson* standard and concluding that the appellate court adequately addressed the issue). This entitlement to deference coincides with recognition that claims for habeas corpus relief do not render "[f]ederal courts...forums in which to relitigate state trials.  ...The procedures adopted to facilitate the orderly consideration and disposition of habeas petitions are not legal entitlements that a defendant has a right to pursue irrespective of the contribution these procedures make toward uncovering constitutional error." *Autry v. Estelle,* 464 U.S. 1, 3 (1983) (citation omitted).

As the evidence in this case meets the *Jackson* standard, Moody has presented nothing in his habeas petition to overcome the deference afforded the Mississippi Court of Appeal's

---

[58] The facts stated by the court of appeals in its decision of the case as to what happened during the commission of the charged crimes essentially comport with those stated by David Moody in his confession.  838 So. 2d at 327 ¶ 2; Tr. 800-803.  The jury was shown the videotape of that confession.  Tr. 806-810.  Other evidence of the crimes included hairs of Robbie Bond that were found inside the truck driven by the Moodys and in the area of the bridge (Tr. 993); DNA samples taken from various locations described by Moody that matched Robbie Bond (Tr. 901, 904, 906) and William Hatcher (Tr. 902, 904, 906); Kenneth Moody's DNA from a vaginal swab collected from Robbie Bond (Tr. 904-05); William Hatcher's blood on a broken knife found near the bridge (Tr. 906, 736-38); and testimony from the pathologist who performed the autopsies on Bond and Hatcher that Hatcher had sustained stab and slash wounds (Tr. 869-71), contusions and lacerations to the head (Tr. 871-72), and that the at-least-six blows to the head had killed him (Tr. 872-74); further testimony from the pathologist that Robbie Bond had sustained multiple bruises on her arms and legs (Tr. 875-77), massive fractures of the facial bones consistent with a blow from a heavy object (Tr. 875, 877-78), injuries to her larynx indicative that an object with a diameter of approximately one to one-and-a-quarter inches (Tr. 889) had been placed six or seven inches into her throat (Tr. 879), and that the head trauma and the airway injury caused her death.  (Tr. 879).  The jury then saw photographs of Bond and Hatcher as the pathologist again described their injuries. (Tr. 884-88).

decision.  He has likewise failed to show that its adjudication of the sufficiency-of-the-evidence issue runs afoul of 28 U.S.C. § 2254(d).  Additionally, federal court review "of a question of federal law decided by a state court is generally unavailable if the state court resolved the question on a 'state law ground that is independent of the federal question and adequate to support the judgment.'" *Rosales v. Dretke,* 444 F.3d 703, 707 (5th Cir. 2006) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).

**Jury Instructions**:

Grounds eight and ten present jury instruction challenges.  Moody claims that Instruction S-3 lessened the State's burden of proof on an offense charged in the indictment because it did not track the statutory elements for the offense of rape.  According to Moody, omitted from the instruction was the requirement that the State prove that the victim was of "previous chaste character."[59]  Presented with this argument on direct appeal, the court of appeals referred to the statutory presumption of chastity and the defendant's burden to prove otherwise.[60]  *Moody,* 838 So. 2d at 336 ¶ 47.  Reasoning that lack of any "evidence whatsoever presented by the defense to put the victim's character for chaste behavior into issue" left "the statutory presumption of chastity to unequivocally control the issue," the court found "the failure to include the matter in the instruction on what constituted rape to be harmless error."   838 So. 2d at 337 ¶ 49.  As to another instruction challenged for purportedly lessening the State's burden of proof, the court stated that it did not "think the instruction, when considered in conjunction with all others, has any tendency...to impermissibly lower the State's burden of proof" and found the issue "without

---

[59] Petition at 8 para. H.

[60] Addressing Instruction S-12, which stated this presumption, the court rejected Moody's "contention that the State had to somehow affirmatively prove the victim's chaste character in order to convict" as being "without merit."  *Moody,* 838 So. 2d at 337 ¶ 52.

merit."  838 So. 2d at 337 ¶ 51.

Moody also claims that the trial court's failure to give Instruction D-17 on duress denied his right to have his theory of defense presented to the jury for consideration.[61]   Declining to reverse his conviction on this basis, the court of appeal first determined that the "only evidence of coercion came in Moody's taped statement to police."  838 So. 2d at 337 ¶ 54.  It then observed that the "defense of duress rises substantially above mere acts of intimidation of hyperbolic threats and there is nothing credible in this record that would reasonably support such a finding by the jury." *Id.* at 337-38 ¶ 51.  In this regard it, it stated

> In this case, we cannot say that the self-serving statements in Moody's police statement, unaccompanied by any corroborating evidence or by Moody's own testimony as to his state of mind and the source of his anxiety given directly to the jury, rose to the level of requiring a 'duress' instruction and we decline to reverse this conviction on that basis.

838 So. 2d at 338 ¶ 55.

The court went on to "note that defense counsel was permitted to argue Moody's lack of criminal intent based on fear of harm from his cousin if he did not do his bidding, thereby adequately presenting this defense to the jury for consideration." *Id.* [62]

As the state appellate court rejected Moody's arguments on the merits, this court's consideration of his instruction-related claims is again limited to a determination of whether that court's decision involved an unreasonable application of clearly established *federal* law or was contrary to such law.  28 U.S.C. § 2254(d)(1).

The United States Supreme Court has made it clear that "instructional errors of state law

[61] Petition at 9 para. J.

[62] *See* Defendant' Closing Argument:  Tr. 1189: 1-8; 1189: 25–1190: 2; 1191: 17-24; 1193: 24–1194: 2.  The claimed threats were also mentioned in the opening statement.  Tr. 657-58.

generally may not form the basis for federal habeas relief." *Gilmore v. Taylor,* 508 U.S. 333, 344 (1993); *see also Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991) (stating that "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief"). It has observed as "well established" that challenged jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.* at 72. The inquiry required of a federal court conducting a review for habeas purposes is only whether any error in giving or failing to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147 (1973); *see also Galvan v. Cockrell,* 293 F.3d 760, 764-65 (5th Cir. 2002)(noting that the petitioner's burden of demonstrating "that an erroneous jury instruction violated [his] due process rights is greater than the showing required to establish plain error on direct appeal").

In *Gilmore v. Taylor*, the Court referred to its cases following *Cupp v. Naughten* by which it had been established "that States must prove guilt beyond a reasonable doubt with respect to every element of the offense charged, but that they may place on defendants the burden of proving affirmative defenses." 508 U.S. at 341. The *Gilmore* Court also rejected the argument "that the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process." 508 U.S. at 344. Were it otherwise, "the rule reaffirmed in *Estelle v. McGuire*...that instructional errors of state law generally may not form the basis for federal habeas relief" would be rendered a nullity. 508 U.S. at 344.

In this case, the defense challenged Instruction S-3 because it did not contain the "previous chaste character" language set out in the statutory definition of rape.[63] Tr. 1150:

---

[63] R. 248.

23–1151: 4.  However, Instruction D-26 was given,[64] and that instruction–which according to the defense is a proper statement of the law–did contain the "previous chaste character" language. Tr. 1167: 22–1168: 4.  And, while the trial court may not have given the defendant's offered duress instruction, it did give at his instance an instruction on the presumption of his innocence[65]and  numerous instructions on reasonable doubt[66] as well as a "mere presence" instruction.[67]   Thus, under the circumstances of this case, the giving of instruction S-3 and the refusal of instruction D-17,  if unfair at all,  was not so unfair as to rise to the level of a violation of Moody's due process rights. Consequently, Moody is not entitled to habeas relief on his jury instruction claims.  *See Jackson v. Anderson,* 112 F.3d 823, 825 (5th Cir. 1997) (quoting *Seaton v. Procunier,* 750 F.2d 366, 368 (5th Cir. 1985) ("We will take the word of the highest court on criminal matters of [Mississippi] as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law.")).

## CONCLUSION

For the reasons stated above, each of Moody's claims for federal habeas relief is denied either on the merits or as procedurally barred.[68]  Accordingly, his Petition for Writ of Habeas

---

[64] "For your deliberations, rape is defined as an assault with intent to forcibly ravish any female of previous chaste character." R. 269.

[65] R. 256.

[66] R. 255, 259, 266.

[67] R. 270.

[68] Although Moody has not requested an evidentiary hearing, had he, the issues that he has raised being without merit and as the conditions set forth in § 2254(e)(2)(A) & (B) are not met, he is not entitled to such a hearing.

Corpus must be denied in all respects and this case dismissed with prejudice.[69]

      IT IS THEREFORE ORDERED that David  Moody's Petition for Writ of Habeas Corpus [1] is  DENIED and the case dismissed with prejudice.

      A separate judgment shall be entered herein in accordance with Federal Rule of Civil Procedure 58.

      SO ORDERED this, the  21st  day  March, 2007.


                    *s/ Keith Starrett*
                UNITED STATES DISTRICT JUDGE

---

[69] Although AEDPA requires total exhaustion as a prerequisite for a district court to grant a petition, it allows the court to <u>deny</u> a petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254 (b)(1)(A);  28 U.S.C. § 2254(b)(2).  This court therefore has the discretion to deny each of Williams' claims for relief either on the merits or as procedurally barred rather than dismissing the petition as mixed.  *Neville v. Dretke,* 423 F.3d 474, 480, 482 (5th Cir. 2005).